### P<small>ATRICK</small> W<small>ALSH</small>

*v.*

### M<small>ATTHEW</small> J. B<small>RENNAN</small> *et al.*

1. M<small>ORTGAGES</small>—*defeasance.* A party executed a conveyance, absolute in form, and received from the grantee a writing, in which the latter agreed, in consideration of the deed, to endeavor to sell the property conveyed within one year, and after paying a debt due from the grantor to a person who held a deed of trust upon the same property, and also a debt due to the grantee himself, to repay to the grantor all the surplus arising from the sale, and any rent received by the grantee during the year: *Held,* that this writing did not amount to a defeasance, it not being under seal, nor purporting to defeat the estate conveyed by the deed in any event. It might, perhaps, be called a declaration of trust.

2. P<small>OWERS</small>—*whether limited.* The power given to the grantee, under the conveyance to him, and the writing mentioned, to sell the property, was not a limited power; the property was not to revert to the grantor, and his

13—52<small>ND</small> I<small>LL</small>.

only claim was for an account from the grantee of the proceeds of the sale, and for the payment of any surplus there might be.

3. So the title of a *bona fide* purchaser from such grantee, having no notice of the trust relations between the latter and his grantor, would not be affected thereby, and such grantor would not be entitled to a reconveyance of the property upon payment of the amount secured.

W<small>RIT</small> O<small>F</small> E<small>RROR</small> to the Superior Court of Chicago; the Hon. J<small>OHN</small> A. J<small>AMESON</small>, Judge, presiding.

This was a suit in chancery, instituted in the court below, by Patrick Walsh, against Matthew J. Brennan and Thomas Walsh, by which the complainant sought to redeem a certain lot of ground conveyed by him to Thomas Walsh, and by the latter sold and conveyed to Brennan. The circumstances upon which this alleged right of redemption is based are set forth in the opinion of the court.

Messrs. D<small>ENT</small> & B<small>LACK</small>, for the plaintiff in error.

Mr. C<small>HIEF</small> J<small>USTICE</small> B<small>REESE</small> delivered the opinion of the Court:

The questions presented by this record are chiefly questions of fact, on which the court below, after a full hearing of the cause, in which much conflicting testimony was heard, has passed, and we are called upon to set aside that finding, and reverse the decree dismissing the bill of complaint.

The plaintiff in error makes these points: First, that the evidence shows that the property in question was held by the defendant, Thomas Walsh, in trust to secure certain moneys advanced by him to the plaintiff, and under a limited power. Second, that this relation was well known to the defendant, Brennan, at the time he purchased the property, and consequently, took the property charged with the rights of the plaintiff; and third, that the sale by Thomas Walsh to Brennan was unauthorized, and made without the consent and contrary to the demands of the plaintiff, and of all which

Brennan, the purchaser, had full notice at the time of purchasing.

As a corollary from these propositions, the plaintiff insists he is entitled to a reconveyance of the property upon payment of the amount secured, less rents and profits.

Defendants in error have furnished no brief or argument, and we decide the case on the plaintiff's showing alone.

We have examined all the testimony in the record upon the several points made by the plaintiff, and are satisfied it greatly preponderates in favor of the finding of the court below.

The deed executed by plaintiff to Thomas Walsh bears date April 8, 1859, and is absolute on its face, reciting that it was made subject to a trust deed to Daniel Brainard, to secure eleven hundred and eighty dollars due Brainard as purchase money of the lot, and executed on the same 8th day of April.

At this time, we would infer from the testimony, plaintiff was largely indebted to the defendant, Thomas Walsh, and on the execution and delivery of the deed of April 8th, Thomas gave to plaintiff a writing of the following tenor : " I hereby agree in consideration of receiving a special warranty deed from Patrick Walsh for N. 25 feet, lot 2, block 5, in Brainard and Evans' addition, that I will endeavor to sell said lot within one year from the date hereof, and that after paying all moneys due to Daniel Brainard, and also to myself, with any interest accruing thereon, then I will repay to said Patrick Walsh all the surplus arising from said sale, and for any rent received by me during said year."

This writing is called by plaintiff's counsel a defeasance, which it clearly is not, as it is not under seal, and on its face does not purport to defeat the estate conveyed by the deed in any event. It is of an anomalous description, and may, perhaps, be called a declaration of trust, which was not recorded with the deed, but kept in plaintiff's pocket, and of which the public had no notice.

Plaintiff's counsel say Thomas Walsh had this property so conveyed by this absolute deed under a limited power. We

do not so understand it. The deed conveyed the title without condition or limitation, to Thomas Walsh, and by his writing as above, he was to endeavor to sell it in one year to pay Brainard and himself, but failing in that, there is no provision that the property shall revert to plaintiff. All that he could claim would be an account from Thomas of the proceeds of the sale, and if there was any surplus, then ask for a decree for that surplus. The title of a *bona fide* purchaser, without notice of this secret understanding of these parties, could not be affected by it, he having purchased from the record.

This brings us to the consideration of the second point : did Brennan, the purchaser, know of this trust?

On this point, the evidence is quite conflicting. The Walshes —three of them—and Thomas Walsh's step son, Boaz, all testify to knowledge on the part of Brennan, and that he was warned not to purchase the property of Thomas Walsh, and that it was plantiff's property.

This is distinctly denied by Brennan, and by his brother, Patrick, and by Robert C. Wright and John A. Tyrrell, real estate dealers, under the firm name of Wright & Tyrrell, friends of the Walshes, and who performed a most important part in effecting the sale to Brennan. Theirs is the testimony of business men who know about what they are testifying, and seem to be familiar with the whole transaction. From the testimony of these witnesses, it is very certain the sale to Brennan was made with the knowledge and approval of the plaintiff, who, finding that Brennan would not give more than twelve hundred dollars for the property, made no further objection. He insisted at first that Brennan should give two hundred dollars more, which being declined by Brennan, he then claims one hundred dollars more, which Brennan persistently refused to give. Then the deed was executed. This deed bears date March 31, 1862. These facts dispose of the second and third points made by plaintiff in error, and place Brennan, the purchaser, on impregnable ground.

The fact that the debt was not due by one month, is of no importance in view of the fact that the sale of the property was made with the knowledge of the plaintiff, and for its full value at the time of the sale, and without objection by him. We do not find it true, as contended by plaintiff, that the sale was made to Brennan for an inadequate consideration, before any money was due on the property, and contrary to plaintiff's rights and expressed wishes. The testimony of Thomas Walsh on all these points is wholly unreliable, and that of plaintiff and the others called in his favor, is of a rambling, disjointed and uncertain character, not calculated to make a favorable impression on the mind of a court.

The sale was made in 1862, when real estate in Chicago was at the lowest point of depression, and the real estate dealers, Wright & Tyrrell, testify that the sum paid for it by Brennan was its full value.

Since that date, real estate in Chicago has had an upward tendency so great as to astonish the dealers in it, and had reached its climax about the time this bill was filed—in April, 1868,—up to which time, a space of six years and more, we hear no word of complaint from the plaintiff, and no attempt made by him to redeem. Had the property fallen in value, it is not at all probable this effort would have been made. No reason is shown to justify this *laches*, if he had equities, for, if the property was sold below its value, and contrary to the trust, a pledge of the property would have enabled the plaintiff to control means sufficient to litigate his rights in a court of justice. Nothing sufficient is shown why he has not so done. On the whole record we can see no equity on plaintiff's side. The facts are all against him, and the superior court did right in dismissing the bill, and the decree must be affirmed.

*Decree affirmed.*